IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KRYSTAL RAY GRAYSON WEBSTER, )<br>AIS #228428, )<br>   )<br>   Plaintiff, )<br>   )<br>v. )<br>   )<br>   )<br>QUALITY CORRECTIONAL )<br>HEALTH CARE, et al., )<br>   )<br>   Defendants. ) | CASE NO. 2:13-CV-641-TMH<br>[WO] |

# RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Krystal Ray Grayson Webster ["Webster"], an indigent state inmate, challenging the adequacy of medical treatment provided to her during previous intermittent stints of incarceration at the Montgomery County Detention Facility. Webster names Quality Correctional Health Care ["QCHC"], the contract medical care provider for the Montgomery County Detention Facility, and Dr. Johnny E. Bates and Dr. Jerry N. Gurley, physicians employed by QCHC at the jail, as defendants in this cause of action.[1] Webster seeks monetary damages for the alleged violation of her constitutional rights.

The defendants filed an answer, special report and supporting evidentiary materials,

---

[1] The plaintiff simply identifies the individual defendants as Dr. Bates and Dr. Gurly. In the interest of clarity, the court will utilize the names of these defendants as set forth in the defendants' evidentiary materials.

including affidavits and certified medical records, addressing Webster's deliberate indifference claim. The court thereafter informed Webster that the defendants' special report may, at a future time, be treated as a motion for summary judgment and explained to Webster the proper manner in which to respond to a motion for summary judgment. *Order of October 18, 2013 - Doc. No. 16.* Pursuant to the aforementioned order, the court deems it appropriate to treat the defendants' report as a motion for summary judgment. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'\" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving for summary

---

[2] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current version of the rule.

judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to her case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities [and medical personnel]. Unless a

> prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Webster is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting her claim of a constitutional violation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is

4

not sufficient to oppose summary judgment...."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to her case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do

5

more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Webster fails to demonstrate a requisite genuine dispute of material fact so as to preclude summary judgment. *Matsushita*, *supra*.

### III. DISCUSSION[3]

Webster served several limited terms of incarceration in the Montgomery County Detention Facility from November 16, 2011 until June 20, 2013.[4] Webster complains that during these periods of confinement the defendants failed to provide her adequate medical treatment. Specifically, Webster asserts that the defendants failed to diagnose her as suffering from hypothyroidism, a condition with which she was allegedly diagnosed after her most recent transfer to the Alabama prison in the latter part of June 2013. *Complaint - Doc. No. 1* at 3. In support of this assertion, Webster asserts that the defendants should have conducted tests which would have revealed the presence of this condition. *Id*. The defendants adamantly deny they acted with deliberate indifference to Webster's medical needs.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to her serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254

---

[3] The evidentiary materials indicate that the alleged constitutional violation made the basis of the instant complaint occurred during Webster's incarcerations in the Montgomery County Detention Facility as a convicted inmate. Regardless of Webster's status in the jail either as a pre-trial detainee or convicted inmate, the applicable standard of review remains the same. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.... However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492 (1986) (For analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.); *Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

[4] The medical records indicate that during her last term of confinement at the Montgomery County Detention Facility Webster was thirty years of age.

(11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."

> That medical malpractice-negligence by a physician-is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir.1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir.1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir.1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir.1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to set forth a cognizable claim of "deliberate indifference to [a] serious medical need ..., Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."

*Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, defendant must know of and then disregard an excessive risk to prisoner's health or safety). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ... emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical

> malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."). Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient). Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

The evidentiary materials filed by the defendants address the allegations made by Webster. A thorough review of these documents demonstrates that the affidavits submitted by the defendants are corroborated by the objective medical records compiled contemporaneously with the treatment provided to Webster regarding the instant claim of deliberate indifference, records which have not been disputed by the plaintiff. The affidavit filed by Dr. Gurley describes the treatment provided to Webster for the periods of her incarceration at the Montgomery County Detention Facility which are relevant to the claims pending before this court.

> 1. During the time Ms. Webster was cared for by QCHC. she never displayed any signs, symptoms or physical findings which are normally associated with hypothyroidism and/or a thyroid goiter. The only symptom that could be attributed to hypothyroidism would be of some depression, but [Ms. Webster's depression] was of a very longstanding nature extending back at least to 2010. She had been seeing Montgomery Mental Health [while not incarcerated] and had been seen by a psychiatrist, as well as Dr. Bates and myself. At no time did she exhibit any of the most common symptoms of hypothyroidism, including fatigue, weight gain, sensitivity to cold, constipation or abnormal menstrual cycles.
> The most common cause of thyroid disorder is hypothyroidism and is usually caused by Hashimoto's thyroiditis or an autoimmune hypothyroidism, a form of thyroid inflammation caused by one's own immune system. It is important to note that this probably effects more than 10 million people in the United States alone and approximately 10% of all women over the age of 30 have this thyroiditis. Hypothyroidism is very easily treated after establishing a correct level of medication and rarely causes severe complications.
> I have not seen the medical records from [the Alabama prison system]. It is entirely possible that [Ms. Webster] exhibited symptoms while there, which lead to a diagnosis of hypothyroidism. If she had exhibited such symptoms while under the care of QCHC, she would have been treated appropriately. In any event, however, the condition is easily treatable and rarely causes long term problems.
> 2. On several of the intakes Ms. Webster was positive for illicit drugs, particularly methamphetamine and cocaine. She was also taking antidepressant medicine, either Zoloft or Prozac. She also went through alcohol withdrawal both

in May of 2012 and in May of 2013, and on one occasion[] was actually placed on suicide watch. It was notable that she was in the Autauga County Jail in November of 2012, and had no symptoms [of hypothyroidism] while there. She had previously been in Julia S. Tutwiler prison for women in 2007. She was seen on several occasions for sick calls [while incarcerated at the Montgomery County Detention Facility], and most of these were for re-establishing her antidepressant medication, either Zoloft or Prozac. There were also sick calls for dental pain, wanting a flu[] shot, [complaints of] back pain, and [symptoms associated with a] cold.

    3. On two different occasions, July of 2012 and February of 2013, [Ms. Webster] was seen at the Montgomery County Detention Facility, by Dr. Valamanchili, a psychiatrist. He continued her on Prozac and/or Zoloft. He noted a diagnosis of previous substance abuse. [Webster also complained of bites and itching on February 4, 2013 with small red bumps on the left hip noted by the attending nurse].

    4. There was one occasion, in April of 2012, when Ms. Webster had an order for a HIV test based on the request of one of the Circuit Judges. The test was negative.

    5. There were two occasions where she was seen for mental health chronic care by Dr. Bates, in March of 2013. She had improved on her mental health medicines and was referred to me for a pap smear. She had no complaints on that visit.

    6. On March 31, 2013, Ms. Webster had a mental health follow up with Dr. Bates and had no complaints at that encounter.

    7. Ms. Webster was referred to me and was seen in February 2013 for a breast exam, which showed a small nodule in the left breast and diffuse cystic mastopathy was noted. The right was greater than the left and there was a 1.5 cm cyst verses small fibroadenoma. Ms. Webster was informed of the findings and was advised on instructions for self breast exams. She was to be rechecked in six weeks. This was accomplished and there was a decrease in the size of the cyst, but there was still some diffuse cystic mastopathy. I advised mammograms to start at age 35. There was no prominent family history of breast cancer. Ms. Webster was referred to me for a GYN exam and a pap smear, which was done on March 29, 2013, and this exam was normal and her pap smear was negative.

    8. Approximately 3 weeks prior to being transferred to Julia S. Tutwiler, Ms. Webster had been seen by Dr. Bates, and had displayed no type of medical or mental problems and was just trying to get in a mental state to cope with having to go back to prison.

    9. Throughout all her encounters, Ms. Webster's weight never varied. Her pulse remained low and normal and she denied any medical problems, symptoms, [or] signs [related to a thyroid condition] on any evaluation by the nursing staff

or physicians.
    10. Ms. Webster's medical care while at MCDF was timely, appropriate and responsive to her mental and physical state and was always in the best interest for her overall well being....

*Exhibit 1 to the Defendants' Special Report (Aff. of Dr. Jerry N. Gurley) - Doc. No. 15-1* at 2-4.

The affidavit filed by Dr. Bates provides the following explanation of the treatment afforded Webster.

    1. Ms. Webster's records show that since 2009 she has been incarcerated numerous times and in numerous facilities. She has had multiple intake histories performed at Montgomery County alone. Such intake histories were on May 11, 2013, May 20, 2012, May 4, 2012, November 17, 2011, April 18, 2011, and February 10, 2011....
    2. In none of those histories did [Ms. Webster] relate a history of hypothyroidism, nor did she complain of symptoms [associated with] hypothyroidism. She did complain of chronic depression and was continued on an antidepressant.
    3. Ms. Webster was placed in chronic care for her depression [and received evaluations and treatment for various complaints].... She was seen at the mental health chronic care clinic on March 22, 2013 and on May 31, 2013. On the March 22, 2013 exam I scheduled her for a routine pap smear.
    4. Her intake weight on May 11, 2013 was 118. This is down 2 pounds from her weight of 120 on May 22, 2012. It should be noted that weight gain [not weight loss as experienced by Ms. Webster] is one of the [most common] signs of hypothyroidism. Hypothyroidism is difficult to diagnose [absent associated symptoms] and is not routinely screened for in [Ms. Webster's] age group. In fact, there are no clinical guidelines applicable to her.
    5. Hypothyroidism is not a deadly disease and rarely causes any significant problems, hence the difficulty making the diagnosis.
    6. ... [During her confinement at the Montgomery County Detention Facility,] the necessary screening for her age [was performed] by doing a pap smear. We would have performed a [test to determine the level of] TSH [thyroid-stimulating hormone] if it had been indicated.
    7. [The article attached to this affidavit] from the Mayo Clinic Proceedings ... states:
    "Uniform national guidelines for screening for thyroid disease with serum TSH levels have not been established. However, because of the high prevalence of SCH [subclinical hypothyroidism] and associated metabolic risk factors such

13

> as hyperlipidemia, the American Thyroid Association recommends screening by measurement of serum TSH beginning at age 35 years and every 5 years thereafter."
> * * *

*Defendants' Exhibit 2 (Affidavit of Dr. Johnny E. Bates) - Doc. No. 15-2 at 1-2.*

Under the circumstances of this case, the court concludes that the course of treatment undertaken by the defendants in addressing the medical issues presented to them by Webster did not violate her constitutional rights. The medical care Webster received was certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. The allegations presented by Webster fail to establish deliberate indifference by the defendants as the record is devoid of evidence that the defendants had knowledge that Webster suffered from hypothyroidism and with this knowledge ignored the risk to her health. Specifically, the record contains no evidence that the defendants were aware of any facts from which they could have drawn the inference that a substantial risk of serious harm existed due to such condition. In addition, there is nothing before the court which indicates that the defendants drew the requisite inference of serious risk and thereafter ignored the risk to Webster's health; instead, the undisputed evidentiary materials establish the opposite. *Farmer*, 511 U.S. at 837 (Deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."); *Johnson*, 145 F.3d at 168 (A defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk

to serious condition to warrant finding of deliberate indifference.); *Adams*, 61 F.3d at 1546 (The plaintiff must establish both "the [defendants'] knowledge of a condition, [and] the knowledge of necessary treatment coupled with a refusal to treat or a delay in treatment."); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (Deliberate indifference to a serious medical need requires showing of more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."); *Hinson*, 192 F.3d at 1345 (The law is well settled that neither medical malpractice nor negligence by a physician is sufficient to provide the basis of a deliberate indifference claim.). Moreover, whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis" on which to ground constitutional liability. *Id*. at 1545-1546; *Franklin*, 662 F.2d at 1344 (difference of opinions between medical personnel and inmate do not violate the Eighth Amendment).

It is undisputed that the defendants routinely evaluated Webster's complaints/requests for treatment and assessed her physical condition relative to each of her complaints. After these evaluations, the jail's medical personnel provided treatment to Webster in accordance with their professional judgment as indicated by the nature of the complaint presented to them and the symptoms exhibited by Webster. Webster has failed to present any evidence which indicates that the defendants knew that the manner in which they provided treatment created a substantial risk to her health and that with this knowledge consciously disregarded such risk. The record is therefore devoid of evidence, significantly probative or otherwise, showing that the defendants acted with deliberate indifference. Consequently, summary judgment is due to be granted in

favor of the defendants.  *Carter*, 352 F.3d at 1350.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before December 11, 2013 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding

precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 25th day of November, 2013.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE